FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 04, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CODY S.,[1] | No.  1:25-cv-3018-EFS |
| Plaintiff, | |
| v. | **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |
| FRANK BISIGNANO, Commissioner of Social Security,[2] | |
| Defendant. | |

Plaintiff Cody S. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 and Title 16 benefits, while the

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

[2] Frank Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), he is substituted as the Defendant.

Commissioner asks the Court to affirm the ALJ's denial. As is explained below, because the ALJ 1) failed to consider the required supportability factor for the administrative medical findings and a medical opinion, and 2) did not fully and fairly consider the longitudinal record when evaluating the consistency factor, this matter is remanded for further proceedings.

## I.    Background

In 2020, at the age of 24, Plaintiff applied for benefits under Titles 2 and 16, claiming disability, based on autism, anxiety, and depression.[3] The at-issue alleged disability period is September 1, 2019, to April 1, 2023.[4] Plaintiff was placed in special education as a child, and when he attended college at Central Washington University ("Central"), he received accommodation and lived with his father.[5] After three years at Central, he dropped out due to stress and mood swings. He then moved to Georgia to live with his mother and worked;

---

[3] AR 250–62.

[4] The parties agree this is the alleged closed disability period.

[5] AR 41, 55–56.

while there, he experienced panic attacks and attempted suicide in August 2019, which was his third suicide attempt.[6] He was placed in inpatient care for about two weeks.

Upon release, he returned to Washington, and with the assistance of his family and mental-health care providers, he obtained temporary housing for those with disabilities.[7] Plaintiff participated in counseling, behavioral health management, took (and adjusted his) medication, eventually working part-time jobs, although not always successfully.[8] On April 4, 2023, he returned to full-time substantial gainful work.[9]

In the interim, the Social Security Administration denied his applications for benefits.[10] He requested an administrative hearing, and in March 2022, ALJ Cecilia LaCara held a telephone hearing, at

---

[6] AR 257, 398–402, 411, 518.

[7] AR 46–47, 54, 484.

[8] AR 725, 929–34, 42–46, 461–62, 500.

[9] AR 834, 836–37.

[10] AR 125–51.

which Plaintiff and a vocational expert testified.[11] Plaintiff testified that, for the last seven months, he worked in housekeeping and maintenance at a hotel four days a week between four to six hours a day, which he reported was the most he could tolerate dealing with people.[12] He stated that his employers were understanding about his mental-health challenges, allowing him to show up late so long as he gave them a heads up.[13] He also discussed his other prior part-time work, one of which he was let go from due to his decline in health and performance.[14] He said he was participating in an intermediate housing program to get himself "back on his feet" while trying not to overload himself too much, as that would cause an upheaval to his mental health.[15] He acknowledged his ultimate goal was to work full-time, to gain emotional coping mechanisms, to participate in behavioral

---

[11] AR 36–64.

[12] AR 42–43.

[13] AR 49–50.

[14] AR 45.

[15] AR 46–47, 54.

and cognitive therapy, and to take medications.[16] He stated that his medications were being adjusted as necessary.[17] He testified that he struggles with depressive phases, which can lead to significant weight loss and behavioral issues where he will either completely shut down or become easily agitated, thereafter leading to decreased job performance and miscommunications at work.[18] He said that he can have a depressive episode either once a month or up to four times a month.[19] He said that his anxiety can be triggered by external events or interactions with others, and causes him to get agitated and fidgety.[20]

After the hearing, the ALJ denied benefits.[21] The Appeals Council denied Plaintiff's requested review, and thereafter, Plaintiff sought

---

[16] AR 47.

[17] AR 47–48.

[18] AR 48–49.

[19] AR 48–49.

[20] AR 50–51.

[21] AR 13–35.

relief in federal district court.[22] On review, the district court found the

ALJ erred by failing to consider the supportability factor when

evaluating Dr. Mashburn's opinion.[23] The matter was remanded back

for a new administrative hearing and decision.

In August 2024, ALJ LaCara held another telephone hearing.[24]

Plaintiff again testified, stating that he gained full-time work on April

4, 2023, working the night-shift at a hotel performing housekeeping

and maintenance.[25] He talked about his part-time jobs prior thereto,

where he had not worked more than 20 hours a week.[26] He was fired

from one of these jobs after poor performance, lost another due to

declining mental health and performance issues, and a third he lost

---

[22] AR 1–6. *See* E.D. Wash no. 1:23-cv-3033-WFN (remanding because

the ALJ failed to consider the supportability factor as to Dr.

Mashburn's medical opinion).

[23] AR 885–93.

[24] AR 830–55.

[25] AR 836.

[26] AR 837–38.

due to the work ceasing. He talked about his involuntary hospitalization in September 2019 and his journey to stabilize his mental health.[27] He shared that it took a while for his treating providers to adjust his medications to ensure that he did not have uneven energy levels or brain fog.[28] His stated that his medication can cause abnormal sleeping patterns and digestive issues.[29] He stated that, although he was a reliable employee as to communicating if he would be running late, he struggled with his prior employment because of his panic and anxiety attacks and chronic depression, which led to low energy and being closed off emotionally.[30] He stated that he was able to do his own grocery shopping, cleaning, and cooking.[31]

---

[27] AR 839–41.

[28] AR 844–45.

[29] AR 849.

[30] AR 841–42.

[31] AR 843.

The ALJ again issued a decision denying benefits.[32] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent with the medical evidence and other evidence in the record."[33] The ALJ considered the lay statements from Plaintiff's dad and sister.[34] As to the medical opinions and prior administrative medical findings, the ALJ found:

- the administrative medical findings of Richard Borton, PhD, and Leslie Postovoit, PhD, persuasive.

- the examining medical opinions of David Mashburn, PhD, and Thomas Genthe, PhD; the reviewing opinions of Michael Jenkins-Guarnieri, PhD, and Holly Petaja, PhD; and the

---

[32] AR 900–22. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[33] AR 908.

[34] AR 913.

opined limitations of treating provider Emily Hamilton, LMHCA, not persuasive.[35]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2027.

---

[35] AR 910–13. Although the ALJ stated that he found Dr. Jenkins-Guarnieri's opinion persuasive, the Court finds this was a typographical error. The explanation given by the ALJ as to her evaluation of Dr. Jenkins-Guarnieri's opinion is that his opinion is inconsistent with the longitudinal record, Plaintiff's activities, and Plaintiff's own statements; each of these findings indicates that the ALJ found Dr. Jenkins-Guarnieri's opinion not persuasive, rather than persuasive. As is discussed below, the ALJ must re-evaluate the medical opinions and administrative findings; therefore, if the Court misconstrued the omission of "not" as a typographical error, the ALJ may remedy this on remand.

- Step one: Plaintiff engaged in substantial gainful activity from April 4, 2023, to the date of the ALJ's decision, but not during the period from March 6, 2020, to April 4, 2023.

- Step two: Plaintiff had the following medically determinable severe impairments: depressive disorder, anxiety disorder, and autism spectrum disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels, but he is limited to occasional brief superficial interaction with the public, routine tasks but not necessarily simple tasks, and only occasional changes in the work setting.

- Step four: Plaintiff is unable to perform past relevant work

- Step five: Plaintiff can perform work as a hospital cleaner, hand packager, and janitor.[36]

---

[36] AR 903–14.

1    Plaintiff timely requested review of the ALJ's denial by this

2  Court.[37]

3              **II.    Standard of Review**

4    The ALJ's decision is reversed "only if it is not supported by

5  substantial evidence or is based on legal error" and such error

6  impacted the nondisability determination.[38] Substantial evidence is

7  "more than a mere scintilla but less than a preponderance; it is such

8  relevant evidence as a reasonable mind might accept as adequate to

9  support a conclusion."[39]

10  _____

11  [37] ECF No. 1.

12  [38] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. §

13  405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012),

14  *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that

15  the court may not reverse an ALJ decision due to a harmless error—

16  one that "is inconsequential to the ultimate nondisability

17  determination").

18  [39] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978,

19  980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028,

### III.   Analysis

Plaintiff argues the ALJ erred when assessing the medical opinions and Plaintiff's symptom reports.[40] In response, the Commissioner argues the ALJ's evaluation of the medical opinions and Plaintiff's symptom reports is supported by substantial evidence. As is explained below, the ALJ failed to consider one of the required factors—supportability—when assessing the administrative medical

_____

1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[40] Plaintiff also raises a step-one issue. This need not be addressed as the parties agree that Plaintiff did not engage in substantial gainful activity during the closed period at issue, September 1, 2019, to April 1, 2023.

findings and a medical opinion, and the ALJ's evaluation of the inconsistency factor is not supported by substantial evidence.

## A.    Medical Opinions and Prior Administrative Medical Findings: Plaintiff establishes consequential error.

Plaintiff argues the ALJ erred when evaluating several of the medical opinions and the prior administrative medical findings; whereas the Commissioner argues the ALJ validly considered the supportability and consistency of the disputed medical opinions and administrative medical findings. The Court finds the ALJ again failed to address the required supportability factor, as well as erred when assessing the consistency factor; these errors are consequential.

### 1.    Standard

The ALJ must consider and articulate how persuasive she found each medical opinion and prior administrative medical finding.[41] The factors for evaluating the persuasiveness include, but are not limited to, supportability, consistency, relationship with the claimant, and

---

[41] 20 C.F.R. §§ 404.1520c, 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

1 specialization.[42] Supportability and consistency are the most important

2 factors, as the regulations require the ALJ to *consider and explain* the

3 supportability and consistency of each medical opinion and prior

4 administrative medical finding:

> The factors of supportability . . . and consistency . . . are the
> most important factors we consider when we determine how
> persuasive we find a medical source's medical opinions or
> prior administrative medical findings to be. Therefore, we
> will explain how we considered the supportability and
> consistency factors for a medical source's medical opinions
> or prior administrative medical findings in your
> determination or decision.[43]

> The regulations define these two required factors as follows:

> (1) Supportability. The more relevant the objective medical
> evidence and supporting explanations presented by a
> medical source are to support his or her medical opinion(s)
> or prior administrative medical finding(s), the more
> persuasive the medical opinions or prior administrative
> medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or
> prior administrative medical finding(s) is with the evidence
> from other medical sources and nonmedical sources in the

---

[42] 20 C.F.R. §§ 404.1520c, 416.920c(c)(1)–(5).

[43] *Id.* §§ 404.1520c, 416.920c(b)(2).

1

2

claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[44]

The ALJ may, but is not required to, explain how the other listed

3

factors were considered.[45] When considering the ALJ's findings, the

4

Court is constrained to the reasons and supporting explanation offered

5

by the ALJ.[46]

6

2.    <u>Dr. Borton and Dr. Postovoit</u>

7

Dr. Borton and Dr. Postovoit reviewed the medical records that

8

were available to them at the time they each issued their

9

10

11

_____

12

[44] *Id.* §§ 404.1520c, 416.920c(c)(1)–(2).

13

[45] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical

14

opinions or prior administrative findings "about the same issue are

15

both equally well-supported . . . and consistent with the record . . . but

16

are not exactly the same," the ALJ is required to explain how "the

17

other most persuasive factors in paragraphs (c)(3) through (c)(5)" were

18

considered. *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

19

[46] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

DISPOSITIVE ORDER - 15

administrative medical finding: Dr. Borton in January 2021, and

Dr. Postovoit in July 2021. They both issued largely the same findings:

- that Plaintiff was moderately limited in at least 3 of the B Criteria areas of functioning.

- that Plaintiff was moderately limited in the abilities to carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.

- that Plaintiff is moderately limited in his ability to interact appropriately with the public and thus should not have more than occasional brief, superficial interaction with the public.

- that Plaintiff is moderately limited in his abilities to respond to changes in the work setting and set realistic goals or make plans independently of others because of his

"past diagnosis of [autism spectrum disorder] and current

report of being a little put off by changes."[47]

To support their opined limitations, both doctors wrote:

> Clmt. likely have some absences with wax and wane of
> symptoms however not of the frequency to preclude
> competitive employment. The claimant has worked in the
> recent past for SGA for two years, and is currently working
> part time. He would retain the capacity to complete most
> tasks required of him in a productive manner, without need
> for excessive breaks and without frequent interruptions.[48]

The ALJ found these opinions persuasive stating:

> While Drs. Borton and Postovoit did not have an
> opportunity to examine the claimant or to review the
> updated record, their opinions are nevertheless generally
> consistent with the longitudinal record to include, for
> example, the claimant's generally intact cognition during
> routine appointments; his ability to interact at least
> superficially with providers, who note intermittent poor eye
> contact, abnormal speech, and irritability but also that he is
> often polite, engaged, and cooperative; findings on formal
> mental status testing that have shown full orientation,
> normal perception, normal memory, a normal fund of
> knowledge, normal abstract thought, and normal insight
> and judgment; often intact or otherwise unremarkable
> cognition during routine appointments with normal
> attention span and concentration, an unremarkable thought
> process, full alertness and orientation, and an appropriate

---

[47] AR 77–80, 93–96, 103–106, 110–13.

[48] AR 78, 94, 105, 112.

1    fund of knowledge; the claimant's ability to engage in
2    activities such as playing video games and work activity;
     and the claimant's statements that he is able to prepare his
3    own meals, complete household chores, and complete his
     own personal hygiene as well as treatment notes suggesting
     that he is generally able to maintain his apartment (finding
4    #6).[49]

5        3.    Supportability

6        Plaintiff argues the ALJ failed to address the supportability

7    factor for either of these sources. The Court agrees. Contrary to the

8    Commissioner's argument otherwise, the ALJ is required to explain

9    how a medical opinion or administrative medical finding is or is not

10   *both* 1) supported by "more relevant . . . objective medical evidence and

11   supporting explanation presented by [the] medical source," i.e., the

12   supportability factor; *and* 2) "consistent with the evidence from other

13   medical sources and nonmedical sources in the claim," i.e., the

14   consistency factor.[50] Here, the ALJ only explained the latter

15   consistency factor and not the supportability factor. The ALJ therefore

16   erred by not explaining whether Dr. Borton's and Dr. Postovoit's

17   _____

18   [49] AR 910.

19   [50] 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2).

DISPOSITIVE ORDER - 18

administrative medical findings were supported by relevant objective medical evidence and explanation.

The Commissioner's argument that the ALJ's mere citation to the exhibits containing Dr. Borton's and Dr. Postovoit's administrative medical findings satisfies the supportability factor is not persuasive. The ALJ's mere citation to the exhibits containing the prior administrative medical findings—the Disability Determination Explanations (hereinafter, "the Determinations")—and the ALJ's summary of the administrative medical findings does not satisfy the ALJ's requirement to "explain how [she] considered" these two administrative medical findings were supported by "relevant . . . objective medical evidence and supporting explanation."[51] The ALJ must do more than cite to the documents containing the administrative medical findings.

In addition, the ALJ's statement that Dr. Borton and Dr. Postovoit did not have an opportunity to review the updated record, i.e., records after January 2021 (Dr. Borton) and July 2021

---

[51] 20 C.F.R. § 404.1520c(b)(2), (c); 416.920c(b)(2), (c).

(Dr. Postovoit), would indicate a reason to find these administrative findings less persuasive rather than more persuasive. Furthermore, as Plaintiff points out, that Dr. Borton and Dr. Postovoit did not examine Plaintiff goes to the "relationship with the claimant" factor, not necessarily the supportability factor.[52] Regardless, the fact that Dr. Borton and Dr. Postovoit did not examine or meet with Plaintiff would typically indicate a reason to find these administrative findings less persuasive rather than more persuasive.

Furthermore, even if the Court delves into the content of the Determinations to assess supportability, the Determinations' summaries of some of the underlying treatment records fails to fairly summarize the then-existing treatment records. For instance, the Determination for Dr. Borton's administrative medical findings fails to highlight some of the abnormal observed symptoms in the summarized medical records; likewise, the Determination does not summarize several medical records containing abnormal findings. For instance, the Determination fails to mention that:

---

[52] *Id.* §§ 404.1520c(c)(1), (3); 416.920c(c)(1), (3).

- During a March 10, 2020 appointment, Plaintiff was observed stammering with somewhat pressured speech and correcting his father's statements.[53]

- Plaintiff's mood was labile during the May 13, 2020 appointment.[54]

- During a May 20, 2020 appointment, Plaintiff's mood was still labile.[55]

- During the May 22, 2020 appointment, Plaintiff demonstrated avoidance and had pressured speech.[56]

- Instead of having a normal speech pattern during the August 17, 2020 counseling session, Plaintiff presented with pressured speech.[57]

---

[53] *Compare* AR 88 *with* AR 523.

[54] *Compare* AR 88 *with* AR 517.

[55] *Compare* AR 88 *with* AR 516.

[56] *Compare* AR 89 *with* AR 638.

[57] *Compare* AR 89 *with* AR 468.

- During the September 1, 2020 counseling session, Plaintiff was hyperverbal at times.[58]

- During the September 28, 2020 counseling session, Plaintiff presented with pressured speech at times.[59]

Although the Determination was merely a summary and need not have included every reviewed medical record or observation, the Determination does not fairly reflect the abnormal mental-health findings in the summarized documents.[60] This cherry-picking of summarized findings on the Determination compounds the ALJ's error of not explaining the supportability of Dr. Borton's and Dr. Postovoit's administrative medical findings.

---

[58] *Compare* AR 89 *with* AR 474–75.

[59] AR 479.

[60] *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022); *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) ("While ALJs obviously must rely on examples . . . the data points they choose must in fact constitute examples of a broader development . . . .").

1    The ALJ's error when considering Dr. Borton's and Dr. Postovoit's

2   administrative medical findings is consequential as these are the only

3   administrative medical findings or medical opinions that the ALJ

4   found persuasive.[61]

5        4.   <u>Consistency</u>

6        As to the ALJ's finding that Dr. Borton's and Dr. Postovoit's

7   findings are "generally consistent" with the longitudinal medical

8   record, this finding fails to meaningfully evaluate that Plaintiff had

9   worse mental-health symptoms during the beginning of the relevant

10   period versus latter.

11

12   _____

13   [61] As previously noted, although the ALJ stated that she found

14   Dr. Jenkins-Guarnieri's medical opinion persuasive, it appears the ALJ

15   mistakenly omitted "not," as the ALJ's analysis indicates that the ALJ

16   found Dr. Jenkins-Guarnieri's medical opinion not persuasive.

17   Therefore, other than Dr. Borton's and Dr. Postovoit's findings, the

18   ALJ found all other treating, examining, and reviewing opinions, which

19   were largely consistent with each other, not persuasive.

The Ninth Circuit requires an ALJ to consider how a claimant's condition changes over time, and whether such changes support a finding of disability for a shorter period even if not for the entire relevant period.[62]

Here, the ALJ did not discuss that the longitudinal treatment record reflects that Plaintiff's journey toward stabilizing his mental health through counseling and medication management involved more mental-health symptoms at the forefront. For instance, Plaintiff was observed with an impaired affect or mood in the spring and summer 2020, *i.e.*, anxious, restricted, tearful, blunted, labile, or irritable.[63] Then beginning in the fall of 2020 the longitudinal record shows a trend of some waning of symptoms but continued waxing as well, with notes that Plaintiff's mood or affect was intermittently labile or depressed or mildly anxious, but other times Plaintiff presented as

_____

[62] *Smith v. Kijakazi*, 14 F.4th 1108, 1110 (9th Cir. 2021).

[63] *See, e.g.*, AR 420, 426, 459, 465, 468, 509, 510, 513, 514, 515, 517, 519, 521.

anxious.[64] Consistent with the treatment record notes that reflect waning anxiety and mood symptoms, a treatment note in March 2021 states, "He has made remarkable progress this last year securing his independence and his relationships with his family have improved a lot and have more confidence."[65] The counseling and other records thereafter reflect that Plaintiff was not often observed with an impaired affect or mood. Nonetheless, he still experienced depressive episodes and struggled with hygiene and maintaining a clean residence.[66] The longitudinal record also reflects that, notwithstanding waning of mood and affect symptoms, Plaintiff routinely struggled with stammering, pressured or elevated speech, and fast speech.[67] A full and fair review of the longitudinal record reveals that the ALJ cherry-picked the normal mental-health findings and/or relied on the improvement in Plaintiff's mental health closer to the end of the

_____

[64] *See, e.g.*, AR 495, 497, 498, 500, 600, 606, 607.

[65] AR 599.

[66] *See, e.g.*, AR 578, 585, 797, 803, 815.

[67] *See, e.g.*, AR 437, 448, 463, 514, 521, 1127, 1133, 1134, 1136.

1  relevant period to discount Plaintiff's observed mental-health

2  symptoms during the earlier part of the relevant period.[68] As a result of

3  this cherry-picking of evidence, the ALJ's finding that Dr. Borton's and

4  Dr. Postovoit's findings are generally consistent with the longitudinal

5  medical record is not supported by substantial evidence.

6      In addition, the ALJ's consistency analysis contains further error.

7  The ALJ's finding that Dr. Borton's and Dr. Postovoit's findings are

8  consistent with Plaintiff's abilities to "complete household chores and

9  complete his own personal hygiene as well as treatment notes

10  suggesting that he is generally able to maintain his apartment"

11  conflicts with other findings by the ALJ. For instance, as to Plaintiff's

12  ability to maintain his apartment, the ALJ states in other portions of

13  her decision:

_____

15  [68] *See Garrison*, 759 F.3d at 1017 ("Cycles of improvement and

16  debilitating symptoms are a common occurrence, and in such

17  circumstances, it is error for an ALJ to pick out a few isolated instances

18  of improvement over a period of months or years and to treat them as a

19  basis for concluding a claimant is capable of working.").

The claimant was not consistently tidy (Ex. 13F, pg. 12) but at the majority of appointments the claimant remained "cooperative, orientated x3, and pleasant. His mood was euthymic and he appeared to be in good spirits," (Ex. 13F, pg. 15-24) despite ongoing difficulties keeping his apartment clean.

. . . .

While the claimant did complaint [sic] of fatigue (for which his dosage was adjusted) and maintained his apartment in a substandard manner, record largely showed the claimant to be pleasant and cooperative, with a euthymic mood and affect the majority of the time (Ex. 10, 11F 13F). [69]

The ALJ fails to meaningfully explain how Plaintiff's maintaining of his apartment in a "substandard manner" or his "ongoing difficulties keeping his apartment clean"—difficulties that are reflected in the record, particularly once he began part-time work—is consistent with the ALJ's decision to find Dr. Borton's and Dr. Postovoit's findings persuasive on the basis that they were consistent with Plaintiff's so-found ability to complete household chores and general ability to

_____

[69] AR 909.

DISPOSITIVE ORDER - 27

maintain his apartment.[70] Moreover, the records also note at times that Plaintiff had body odor, indicating difficulties maintaining his personal hygiene.[71]

On remand, the ALJ is to reassess Plaintiff's documented difficulties with hygiene and passing housing inspections, and is to reevaluate whether such are consistent with or inconsistent with the opined limitations in the administrative medical findings and medical opinions.

5.    Other Medical Opinions

The ALJ's cherry-picking of normal mental-health findings and failure to appreciate that Plaintiff's mental-health symptoms more consistently waned during the end of the relevant period, permeated the ALJ's "consistency" evaluation for not only the findings of Dr. Borton and Dr. Postovoit, but for each of the medical opinions. The ALJ used the same "consistency" rationale—either in the positive or

---

[70] See, e.g., AR 578, 585, 797, 803, 806, 807, 818, 1125, 1128, 1135, 1137, 1140, 1166, 1178.

[71] See, e.g., AR 578, 585, 816.

the negative—when assessing each prior administrative medical finding or medical opinion.[72]

The ALJ's cherry-picking of the normal mental-health observations also impacted the ALJ's supportability analysis for Dr. Genthe's opinion, as the ALJ did not mention that Dr. Genthe observed Plaintiff with "moderate difficulties following the conversation" and that Plaintiff's autism symptoms were not well managed.[73] This error in turn impacted the ALJ's supportability analysis for Dr. Petaja's opinion, as the ALJ incorporated her supportability analysis for Dr. Genthe when evaluating Dr. Petaja's opinion.

Further, like the ALJ failed to do for Dr. Borton and Dr. Postovoit, the ALJ failed to evaluate the supportability factor for Dr. Jenkins-Guarnieri's opinion.[74]

_____

[72] AR 910, 911, 912, 913.

[73] AR 725–27.

[74] AR 911.

Finally, the record reflects care providers adjusted the type and dosage of medications to stabilize Plaintiff's mental-health symptoms while also reducing the side-effects of fatigue, nausea, lightheadedness, confusion, and stomach issues.[75] For instance, as the ALJ commented, Plaintiff's treating provider reduced his dosage of Cymbalta in August 2022 due to his complaints of fatigue resulting from the prior dosage.[76] On remand, the ALJ must consider how medication side effects may have impacted Plaintiff's ability to work during the closed period.[77]

**B.    Symptom Reports: this issue is moot.**

Plaintiff argues that the ALJ failed to provide valid reasons for discounting his subjective complaints. Because the Court is remanding

---

[75] *See, e.g.*, AR 436, 437, 565, 601, 607, 1096, 1104, 1106, 1107. *See* Soc. Sec. Rlg. 16-3p (allowing the medical source to consider medication side-effects and requiring the ALJ to consider medication side-effects when assessing the claimant's symptom reports).

[76] AR 1104–05.

[77] *See Smith*, 14 F.4th at 1110; *Varney v. Sec'y of Health & Human Servs.*, 846 F.2d 581, 585 (9th Cir. 1988).

the case with direction that the ALJ re-evaluate the medical opinions and administrative medical findings, the ALJ must re-evaluate Plaintiff's symptom reports. When doing so, the ALJ is to fairly consider how Plaintiff's condition changed over time.

## C.    Remand: further proceedings

Plaintiff prefers a remand for payment of benefits, rather than a remand for more proceedings. However, when the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[78] At this time, remand for further proceedings is appropriate.

The record reflects that at the beginning of the relevant period—September 1, 2019, to April 1, 2023—Plaintiff was not stable enough to sustain full-time work following his inpatient stay after his suicide attempt. However, "over time, [Plaintiff] moved from a state where" he was unable to "engage in meaningful work to a state in which [he] was

---

[78] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

significantly less hindered,"[79] and thus he was able to obtain and sustain fulltime employment beginning April 4, 2023.

On remand, the ALJ is to fairly and fully consider the longitudinal record, reevaluate the medical opinions and Plaintiff's symptom reports, and then complete the five-step disability evaluation, assessing whether Plaintiff was disabled for at least a 12-month period during the at-issue closed period.

### IV.    Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to reevaluate—with meaningful articulation and evidentiary support—the sequential process. If necessary, the ALJ is to consider calling a medical expert to testify as to when Plaintiff's mental-health symptoms waned sufficiently to allow him to sustain full-time work.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social**

---

[79] *Smith*, 14 F.4th at 1114.

**Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).**

2.    Consistent with Social Security Administration policy, **a new ALJ is to be assigned** to this matter.[80] The ALJ is to issue a new decision **within 120 days.**

3.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 10**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 4th day of August 2025.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge

---

[80] Program Operations Manual System (POMS) HA 01210.055-D (Assignment of Service Area Cases to Administrative Law Judges).